**Michael D. BAYER, Appellant,**

v.

**UNITED STATES DEPARTMENT OF the TREASURY, Appellee.**

No. 90–5393.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 27, 1992.
Decided Feb. 21, 1992.

Paul R.Q. Wolfson, Coral Gables, Fla., with whom Alan B. Morrison, Washington, D.C., was on the brief, for appellant. Michael D. Bayer, pro se, also entered an appearance for appellant.

William J. Dempster, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates, and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before MIKVA, Chief Judge, RUTH BADER GINSBURG and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge RUTH BADER GINSBURG.

RUTH BADER GINSBURG, Circuit Judge:

Michael D. Bayer appeals from an order granting summary judgment to the Department of the Treasury ("Treasury" or "Department") in an action alleging employment discrimination based on religion in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16 ("Title VII"). Treasury had sought dismissal on the ground that Bayer, formerly employed as a tax law specialist at the Internal Revenue Service ("IRS" or "Service"), failed to contact an Equal Employment Opportunity ("EEO") counselor within thirty days of the alleged discriminatory act, as required by 29 C.F.R. § 1613.-214(a)(1)(i). Because Bayer's contention that he was unaware of the thirty-day requirement raises a genuine issue of material fact, *see* 29 C.F.R. § 1613.214(a)(4), we reverse the district court's summary disposition and remand for further proceedings.

## I.

In April 1984, Bayer began working in the Employee Plans, Rulings and Qualifications Section of the IRS as a one-year probationary tax law specialist. In December of that year, Bayer received an unsatisfactory evaluation, which contrasted with prior, at least satisfactory, ratings he had received in earlier employment with the Service. Several weeks later, in February 1985, the Service gave Bayer the opportunity to resign, and thereby avoid termination for unsatisfactory performance. This opportunity was offered, Bayer asserts, after the intervention of Warren Joseph, Chief Steward for Chapter 65 of the National Treasury Employees Union ("NTEU"). Bayer had consulted Joseph when Bayer first learned of the decision requiring him to leave his job at the IRS. Through informal negotiation, Joseph worked out an arrangement with the IRS for Bayer's resig-

nation with a favorable reference. During this period, Joseph had advised Bayer not to file a discrimination complaint because that action might hinder the informal arrangement and imperil the favorable reference.

On March 15, 1985, Bayer resigned from the IRS. After leaving the Service, Bayer applied unsuccessfully for various public and private sector positions. His last attempt to gain federal employment failed, he recounts, in February or March of 1986, when the IRS rejected his application for a paralegal position.

On July 18, 1986, sixteen months after he resigned from the IRS, and over 120 days after he was last rejected for employment by the Service, Bayer contacted an EEO counselor. Bayer filed a formal complaint with Treasury on October 28, 1986, fourteen days after his last interview with the EEO counselor. *See* 29 C.F.R. § 1613.-214(a)(1)(ii) (allowing fifteen days for the filing). Bayer's complaint charged that religion-based discrimination caused his poor evaluation, "constructive termination," and non-selection for the IRS jobs he sought after his March 1985 resignation. On December 2, 1986, Treasury's Regional Complaints Center Director rejected Bayer's complaint as untimely. The letter reporting the Director's final decision stated as the reason for the rejection Bayer's "fail[ure] to contact an EEO Counselor within 30 days of the date of the matter alleged to have been discriminatory," *see* 29 C.F.R. § 1613.214(a)(1)(i), and his failure to "indicate that [he was] unaware of the time limit." *See* 29 C.F.R. § 1613.214(a)(4) (time limit shall be extended when complainant was neither notified nor otherwise aware of limit).

Bayer promptly appealed Treasury's final decision to the Equal Employment Opportunity Commission ("EEOC"). On August 6, 1987, the EEOC affirmed the agency's decision to reject Bayer's complaint for failure to seek EEO counseling within the thirty-day period specified in 29 C.F.R. § 1613.214(a)(1)(i). The Director of the EEOC's Office of Review and Appeals stated that Bayer's awareness of the time limit

could be inferred from his argument that fear of an adverse impact on his final evaluation, and on the deferral of his termination, deterred him from filing a complaint. EEOC Decision at 1.

On September 8, 1987, Bayer, then proceeding *pro se,* filed the instant action in district court. In his court complaint, Bayer alleged that Treasury had discriminated against him on the basis of religion in contravention of Title VII. Bayer sought *de novo* review of the merits of his EEO complaint. On September 27, 1990, the district court granted Treasury's motion for summary judgment; the court's spare order gave no explanation for the decision.

## II.

 Prior to instituting a court action under Title VII, a plaintiff alleging discrimination in federal employment must proceed before the agency charged with discrimination. 42 U.S.C. § 2000e–16(c). This administrative remedies exhaustion requirement is mandatory. *Brown v. General Services Administration,* 425 U.S. 820, 832–33, 96 S.Ct. 1961, 1967–68, 48 L.Ed.2d 402 (1976); *Kizas v. Webster,* 707 F.2d 524, 543 (D.C.Cir.1983), *cert. denied,* 464 U.S. 1042, 104 S.Ct. 709, 79 L.Ed.2d 173 (1984). A formal complaint may be lodged with an agency once the complainant has

> brought to the attention of the Equal Employment Opportunity counselor the matter causing him/her to believe he/she had been discriminated against within 30 calendar days of the date of the alleged discriminatory event, the effective date of an alleged discriminatory personnel action, or the date that the aggrieved person knew or reasonably should have known of the discriminatory event or personnel action.

29 C.F.R. § 1613.214(a)(1)(i). This thirty-day regulation is not jurisdictional; rather, it is at least as yielding as a statute of limitations that can be tolled for equitable reasons. *See Jarrell v. United States Postal Service,* 753 F.2d 1088, 1091–92 (D.C.Cir.1985) (failure of government employee to contact EEO counselor within thirty days of alleged discriminatory event

could be excused where plaintiff justifiably relied on the advice of another government officer); *see also Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 1132, 71 L.Ed.2d 234 (1982) (holding that ninety-day (now 180–day) time limit for filing Title VII claim against private employer is not jurisdictional). The Title VII plaintiff bears the burden of pleading and proving in the district court "equitable reasons" for noncompliance with the thirty-day requirement. *Saltz v. Lehman,* 672 F.2d 207, 209 (D.C.Cir.1982).

■ The EEOC regulation controlling this case indicates several equitable grounds for tolling time limits; it prescribes that time limits, including the thirty-day period for contacting an EEO counselor, "shall" be extended by the agency

> when the complainant shows that he/she was not notified of the time limits and was not otherwise aware of them, was prevented by circumstances beyond the complainant's control from submitting the matter within the time limits; or for other reasons considered sufficient by the agency.

29 C.F.R. § 1613.214(a)(4). It is undisputed here that Bayer did not contact an EEO counselor until July 18, 1986, some sixteen months after he was required to leave the Service, and over 120 days after the failure of his last effort to gain re-employment with the IRS. In his affidavit in opposition to Treasury's motion for summary judgment, however, Bayer stated that he "was not ever aware or ever notified of the requirement that the EEO Counselor had to be notified within 30 days of a discriminatory act." *See* Affidavit of Michael D. Bayer, filed Jan. 25, 1988, at 4. Bayer also stated that he reasonably relied on the advice of NTEU Chief Steward Joseph that "filing an administrative complaint [in response to the poor evaluation and proposed removal] would adversely [a]ffect his ability to get a favorable reference." *Id.* at 5. Bayer had similarly told the EEO counselor that he "was never aware or notified of the 30 day requirement." EEO Counseling Report, Aug. 8, 1986, at 2.

Treasury concedes that the Department never notified Bayer of the thirty-day time limit. In support of the summary dismissals Bayer encountered at Treasury, the EEOC, and in district court, however, Treasury highlights the fact that Bayer admits to having considered filing a discrimination complaint during the relevant period. The very consideration Bayer gave to that course, Treasury maintains, shows that he must have been aware of the procedural prerequisites and, specifically, the thirty-day limit on contacting an EEO counselor. The EEOC accepted and repeated Treasury's bonding of awareness of the thirty-day specification to awareness that a discrimination complaint could be lodged. We cannot tell whether Treasury's reasoning in this regard persuaded the district court, for that court supplied no explanation for its decision.

Treasury's logic, counsel now representing Bayer urges, is unsound. We agree. Bayer does steadfastly say that he intentionally refrained from filing a discrimination complaint "for fear that his final [IRS] evaluation ... might be adversely affected." *See* EEOC Decision, August 6, 1987, at 1. But we are at a loss to comprehend why Bayer's knowledge that a complaint could be lodged compels the inference that Bayer knew he had only thirty days to consult an EEO counselor. Indeed, knowledge that he could file a complaint does not demonstrate that Bayer knew consultation with an EEO counselor was a mandatory first step, much less that the step was to be taken within a prescribed number of days.

■ Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is to be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The district judge, in ruling on a summary judgment motion, must assume the truth of the nonmovant's evidence, and draw all justifiable inferences in that party's favor. *See*

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986). In the instant case, Bayer's affidavit flatly states that he was unaware of the thirty-day requirement. Bayer's sworn statement precludes any pre-trial judgment that he was indeed aware of the requirement and is, on that ground, ineligible for the time extension ordered by 29 C.F.R. § 1613.214(a)(4).

Treasury argues that Bayer's training in the law and his several meetings with NTEU Chief Steward Joseph show he was aware of the time limit. But even counsel daily confronted with questions of correct procedure may fail to advert to a thirty-day rule. *See Coffin v. Secretary of Health, Education, and Welfare*, 400 F.Supp. 953, 956 (D.D.C.1975) (three-judge court), *appeals dism'd*, 430 U.S. 924, 97 S.Ct. 1539, 51 L.Ed.2d 789 (1977). In any event, application of the thirty-day rule here, under 29 C.F.R. § 1613.214(a)(4), turns on Bayer's awareness or lack of awareness of the prescription, and that issue presents a credibility question not susceptible of summary adjudication. *See Jarrell*, 753 F.2d at 1091–92 (summary judgment improper where equitable considerations pleaded by Title VII plaintiff might excuse failure to contact EEO counselor within thirty days); *Oaxaca v. Roscoe*, 641 F.2d 386, 391 (5th Cir.1981) (Title VII plaintiff, though he failed to contact EEO counselor until a year after the discriminatory act, "should be given the opportunity to show that he was not aware of [the time limit], despite his government employment and his education"); *Bragg v. Reed*, 592 F.2d 1136, 1139 (10th Cir.1979) (reversing summary judgment against Title VII plaintiff who asserted that, although she was informed of her right to file an administrative complaint, she was not informed of any time limits for such a filing); *Ettinger v. Johnson*, 556 F.2d 692, 696–98 (3d Cir.1977) (overturning summary judgment against Title VII plaintiff where district court had held that plaintiff's asserted lack of awareness of thirty-day limit for initiating administrative complaint "could not be believed" in light of plaintiff's general background and intelligence, educational level, and consultation with attorneys).

Bayer, we note, does not assert that the time to contact an EEO counselor is indefinitely extendable. At some point, he acknowledges, a plaintiff's delay in seeking a remedy for alleged discrimination may bar his action, however uninformed he may have been concerning time prescriptions. *See* Brief for Appellant at 11 n. 2; *cf. Rozen v. District of Columbia*, 702 F.2d 1202 (D.C.Cir.1983) (per curiam). But Treasury has not argued that, apart from the thirty days to consult an EEO counselor rule, Bayer, beyond genuine dispute, waited too long to complain. Indeed, in Treasury's "Statement of Material Facts As To Which There Is No Genuine Issue," filed in the district court pursuant to Local Rule 108(h), Treasury homes in only on the time to contact an EEO counselor. *See* Defendant's Local Rule 108(h) Statement, filed Nov. 20, 1987, at ¶¶ 7, 9, 11.

■ Finally, we mention a point Treasury raised initially in its answering brief in this court, but abandoned at oral argument. Treasury contended here, although not in the district court, that because Bayer named as defendant the Department rather than the Secretary, federal subject matter jurisdiction is absent. If there ever was a shred of plausibility to this misnomer argument, the amendment to Federal Rule of Civil Procedure 15(c), effective December 1, 1991, reveals the plea as utterly unworthy, for the name change is readily made, and the alteration relates back to the date of the original pleading.* The clarification of Rule 15(c), on "relation back of pleading amendments," applies in pending civil ac-

---

* The EEOC "right to sue" notice Bayer received stated: "You must name the appropriate official agency or department head as the defendant." We note that the EEOC has revised this confusing instruction. *See Warren v. Department of Army*, 867 F.2d 1156, 1160 (8th Cir.1989) ("[I]t is unclear whether 'head' modifies only 'depart-

ment' or also 'agency,' and the remainder of the [notice] leaves this ambiguity unresolved."). The EEOC now notifies complainants that they must file a civil action against "the official agency head or department head, identifying that person by his or her full name and official title."

tions "insofar as just and practicable." Order of the Supreme Court Amending Rules, April 30, 1991. Changing the designation of defendant from "Department" to "Secretary" unquestionably meets that test. The failure of counsel representing Treasury to heed, or even mention, in a brief date stamped December 5, the long-published alteration of Rule 15(c) effective December 1, is an oversight "hardly worthy of our great government," *Brandt v. Hickel,* 427 F.2d 53, 57 (9th Cir.1970), all the more so in view of Treasury's endeavor to hold Bayer to a rule about which Treasury gave him no notice.

### Conclusion

Bayer's averment that he was unaware of the thirty-day time limit for contacting an EEO counselor raises a genuine issue of material fact and hence precludes the summary judgment entered without accompanying reasons by the district court. Accordingly, we reverse the district court's peremptory dismissal of Bayer's complaint and remand this case for further proceedings.

*It is so ordered.*