Daniel C. EVANS, Plaintiff,

v.

**DAVIS MEMORIAL GOODWILL INDUSTRIES, Defendant.**

No. Civ.A. 98–1863 (EGS).

United States District Court, District of Columbia.

May 8, 2000.

Anthony Mark Nicewicz, Oakton, VA, for plaintiff.

Anita Barondes, Christopher Alan Weals, Seyfarth Shaw, Michael Franklin Kleine, Washington, DC, for defendant.

## MEMORANDUM OPINION AND ORDER

SULLIVAN, District Judge.

Plaintiff Daniel C. Evans was hired as a writer by a charitable organization, defendant Davis Memorial Goodwill Industries, for an initial employment term of 90 days, but was terminated before the initial term ended. Defendant claims that plaintiff was terminated because he could not perform the essential writing functions of the job. However, plaintiff states that he has sound writing skills to perform the core functions of the job for which he was hired, and that he was improperly fired because of behavior problems stemming from his brain injury that should have been accommodated by Goodwill. Plaintiff brings this claim for violations of the Americans with Disabilities Act, D.C. Human Rights Act, breach of contract, and breach of implied covenant of good faith and fair dealing. Goodwill has filed a Motion for Summary Judgment on all counts.

Upon consideration of the defendant's motion and accompanying memorandum, the response and reply thereto, the arguments made in court at the March 20, 2000 hearing, and for the reasons stated, it is hereby

ORDERED that defendant's Motion for Summary Judgment [20] is GRANTED IN PART and DENIED IN PART.

## DISCUSSION

### A. Standard of Review

Summary judgment should be granted pursuant to Federal Rule of Civil Procedure 56 only if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling upon a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Bayer v. United States Dep't of Treasury,* 956 F.2d 330, 333 (D.C.Cir.1992).

### B. Americans with Disabilities Act

#### 1. Prima Facie Case

The Americans With Disabilities Act prohibits discrimination by an employer "against a qualified individual with a disability because of that disability." It defines discrimination as: "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodations would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A).

At the outset, defendant challenges whether plaintiff is "disabled" under the law. Under the ADA, a plaintiff must show that he has "a physical or mental impairment that substantially limits one or more of the major life activities," has a record of such impairment, or is regarded as having such an impairment. 42 U.S.C. § 12102(2). Here, plaintiff alleges that the life activity of working is impaired by the repercussions of his brain injury. The question is whether he is "substantially limited" with regard to employment by virtue of that injury.[1]

---

1. Our circuit recently addressed the standard for proving "substantially limits" in *Duncan v. Washington Metropolitan Area Transit Authority,* 201 F.3d 482 (D.C.Cir.2000). The court in *Duncan* held that to make out a prima facie case of substantial limitation in working, a plaintiff must show that he is unable to work in "a broad class of jobs" and "precluded from more than one type of job, a specialized job, or a particular job of choice." *Duncan,* 201 F.3d at 486, (citing *Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 119 S.Ct.

Here, plaintiff alleges a history of problems holding jobs that he claims is traceable to his head injury. (Opp. To Mot. Dismiss at 7, citing testimony of Dr. Hebda). The injury has not prevented plaintiff from *being hired,* but he says it has created behavioral problems that have made it difficult for him *to hold* jobs.

Defendant argues, with considerable justification, that plaintiff did not articulate his disability in these terms until the litigation was underway (Reply Mem. Regarding Suppl.Auth. at 2)[2] Defendant also questions whether plaintiff has adequately supported this contention in the record. The Court does not reach this issue. If plaintiff suffers from a mental disorder that affects his ability to adapt to the workplace, that condition would appear to be a disability that is covered by the ADA. However, the Court does not need to decide whether plaintiff has shown a sufficient record of such impairment because the complaint falls short on other grounds. Specifically, the Court finds that plaintiff has not shown that he provided adequate notice of his disability or that he requested accommodation for limitations related to the disability.

 Employers can only be held liable for discriminating on the basis of "known" disabilities. The disabled employee typically has the burden of providing notice of the disability and the limitations it imposes. *See generally, Crandall v. Paralyzed Veterans of America,* 146 F.3d 894 (D.C.Cir.1998). It similarly lies with the disabled employee to request needed accommodation. *See Flemmings v. Howard University,* 198 F.3d 857, 861

(D.C.Cir.1999) (stating that "[a]n underlying assumption of any reasonable accommodation claim is that the plaintiff-employee has requested an accommodation which the defendant-employer has denied."); *Taylor v. Phoenixville School Dist.,* 184 F.3d 296 (3rd Cir.1999) (finding that "the employer must know of both the disability and the employee's desire for accommodations for that disability.") *See also* 29 C.F.R. Pt. 1630.9, App. (stating that "[i]n general ... it is the responsibility of the individual with the disability to inform the employer than an accommodation is needed.")

It is uncontested that plaintiff told Goodwill about his brain injury. Moreover, it is undisputed that Evans told Goodwill he would need extra time to learn the accounting and financial features of the job—an accommodation he was apparently given.

However, there is no indication that plaintiff told Goodwill that the injury had created a mental condition that would affect his ability to accept criticism and otherwise hold the job—the features plaintiff now advances as the basis of his disability.

Defendant maintains that, to the contrary, Evans concealed any mental disorder both during the application process and while employed at Goodwill. (Reply at 14) When Evans filled out his employment application, he stated that he did not have any limitations that might affect his job performance and did not disclose 12 years of recent vocational training (although he did indicate having received vocational training many years earlier). (*Id.*)

2139, 144 L.Ed.2d 450 (1999)) Defendant relies on this and other caselaw to show that Evans is not "substantially limited" within the meaning of the ADA, noting that Evans has been hired for several jobs since his head injury and even since being terminated at Goodwill. However, plaintiff distinguishes *Duncan* by noting that the plaintiff in that case was alleging future impairment in job seeking/employment, not an established record of such impairment. *See Duncan,* 201 F.3d at 485, fn. 1.

**2.** As defendant points out, when plaintiff was asked to describe his disability in the first set of interrogatories for this lawsuit, plaintiff described a brain injury resulting from a steep fall and stated that, as a result of that injury, he has "a residual impairment to his speech." (Plaintiff's Objections and Answers to Defendant's First Set of Interrogatories at 8)

Plaintiff states that he did provide notice (Plaintiff's Opp.Mot.Summ.Judg. at 9), yet can point to only one statement to his supervisor alluding to his own defensive behavior. Specifically, Evans' deposition references an email to his supervisor, David Pichette, which states "at the risk of sounding like my usual defensive self," (Evans Dep. at 205). Evans goes on to state that he discussed this issue with Pichette and linked the defensiveness to his difficult work experiences resulting from his head injury.

Yet even this statement does not indicate notice of the disability he now claims afflicted him; plaintiff indicated that he was defensive because of the treatment he had received from others due to his injury, not that he had a mental disorder stemming from this injury.

■ It is true that notice under the ADA need not be precise, but it must put the employer sufficiently on notice of the existence and nature of the disability. *See Taylor v. Phoenixville School Dist.,* 184 F.3d 296, 313 (3rd Cir.1999) (stating that "[w]hat matters under the ADA are not formalisms about the manner of the request, but whether the employee or a representative of the employee provides the employer with enough information that, under the circumstances, the employer can be fairly said to know of both the disability and desire for an accommodation.") Nor can an employer assume that an employee with a disability suffers from a limitation. *See Taylor v. Principal Financial Group,* 93 F.3d 155, 164 (5th Cir.1996). Rather, the employee must indicate not only a disability, but also any job-related limitation stemming from that disability. *Id.*

Plaintiff argues that, even if the actual notice to Goodwill was somewhat lacking, the company had ample constructive notice. Plaintiff says he provided ample information about his brain injury and that the burden was on Goodwill to follow up with any questions by contacting his references or asking for documentation. (Opp.Mot.Summ.Judg. at 12)

However, defendant replies that the law prohibits medical inquiries where the employer does not have a reasonable belief, based on objective evidence, that the employee's ability to perform is impaired by a medical condition. (Reply at 17, citing EEOC guidance materials.) Here, given Evans' assurances that he was able to perform the substance of his job without assistance, Goodwill was not required, and perhaps not allowed, to delve into his medical condition.

■ Further, Evans has not presented evidence that he sought any accommodation related to the disability he describes in his pleadings. While plaintiff cites an obligation to engage in an "interactive process" with a disabled employee, this obligation is generally only triggered by an affirmative request. *See Flemmings v. Howard University,* 198 F.3d 857 (D.C.Cir.1999) (noting that "an underlying assumption of any reasonable accommodation claim is that the plaintiff employee has requested an accommodation which the defendant-employer has denied.") *See also, Cannice v. Norwest Bank of Iowa,* 189 F.3d 723 (8th Cir.1999) (holding that there is no per se liability if an employer fails to engage in the interactive process).

Plaintiff says he did request accommodation (Opp.Mot.Summ.Judg. at 22) by allegedly telling his supervisor it would take him more time to adjust to new situations and learn some aspects of the new job. (Opp.Mot.Summ.Judg. at 10) But once again, there is no indication in the record that Evans asked for more time for anything but the financial aspects of the job. Plaintiff concedes that at no time did he ask for a job coach, a feed back loop, or some of the other accommodations his pleadings now suggest would have been indicated by his condition. On the contrary, plaintiff maintained, and continues to maintain, that he does not need special help with writing and was silent as to needing help with issues such as office comportment.

The Equal Employment Opportunity Commission compliance manual for the ADA makes provision for a disabled employee who may have difficulty articulating his or her needs; the compliance manual specifies that a family member, friend or health professional may request accommodation on behalf of a disabled employee. *See Taylor v. Phoenixville,* 184 F.3d at 313. Nor must the request be formal or use the specific words, "reasonable accommodation." *Id.* But there must be some communication to alert the employer to the condition and the need for accommodation.[3] Plaintiff has simply not provided evidence of such a request in this case.

*2. No Showing of Pretext*

▇ There is an additional and alternative basis for dismissal; plaintiff has not cast sufficient doubt on defendant's assertion that it fired Evans because of his inadequate writing skills.

▇ As in Title VII cases, ADA plaintiffs must go through the McDonnell Douglas burden shifting framework. *See Marshall v. Federal Express Corp.,* 130 F.3d 1095, 1099 (D.C.Cir.1997) (citing *Aka v. Washington Hospital Center,* 116 F.3d 876 (D.C.Cir.1997)). Assuming plaintiff has made out a prima facie case, he must nonetheless offer some evidence to rebut a nondiscriminatory reason for the adverse job action. Here, defendant says it fired Evans because of the poor quality of his writing, both in direct fund-raising appeals and business letters.

Plaintiff denies that his fund-raising letters were poorly written and has asserted that his disability does not interfere with his ability to write. (Opp. at 21) He appears to concede there were problems with the business letters he wrote (Opp. at 19, 20), but maintains that these were not an essential part of his job and therefore not a legitimate basis for termination. Defendant insists there were problems with all of plaintiff's writings, but maintains that even if only the business letters were at issue, these *were* an important aspect of the job. As a matter of law, defendant argues, it is not for the employee to determine which job functions are essential. *See Kalekiristos v. CTF Hotel Management Corp.,* 958 F.Supp. 641, 661 (D.D.C. 1997) (noting that "[c]ourts defer 'to the employer's judgment as to what functions of a job are essential.' ")

As this Circuit has noted in the Title VII context, once an employer has asserted a non-discriminatory reason for an adverse job action, "the issue is not 'the correctness or desirability of [the] reasons offered ... [but] whether the employer honestly believes in the reasons it offers.' " *Fischbach v. D.C. Dept. of Corrections,* 86 F.3d 1180, 1183 (D.C.Cir.1996). Here, the defendant has offered ample, uncontroverted evidence that Goodwill officials were unhappy with plaintiff's writing efforts and had in fact received complaints about letters he wrote. (Reply at 3–5.) Indeed, the level of concern about plaintiff's performance prompted an evaluation mid-way through his probationary period at which defendant specified problems with plaintiff's writing and his ability to accept direction with regard to his writing. (Evans Dep.Ex. 19) The record clearly shows grammatical and wording errors in plain-

---

3. The law may grant some leeway regarding notice when the disability involves a mental illness. *See Bultemeyer v. Fort Wayne Community Schools,* 100 F.3d 1281, 1285. (7th Cir.1996) (stating that "[t]he employer has to meet the employee halfway, and if it appears that the employee may need an accommodation but doesn't know how to ask for it, the employer should do what it can to help.") But here there is no evidence the defendant knew plaintiff had a mental disorder that could impact his self awareness and ability to ask for help. Plaintiff notes that his personnel file marked him as disabled pursuant to a "traumatic brain injury leading to ... all other disabling conditions not elsewhere classified or with multiple effects"; but, as defendant points out in response, it did not choose the categories of brain injury leading to "psychotic," "neurotic" or "other mental and emotional disorders." (Reply at 15). Moreover, even *Bultemeyer* contemplates that the employee will signal some need for help to trigger the interactive process.

tiff's writing, as well as management frustration with those errors. Even viewing the evidence in the light most favorable to plaintiff, the Court finds that he has not cast doubt upon defendant's nondiscriminatory justification for his termination.

## C. Non–Federal Claims

Having dismissed the plaintiff's federal ADA claim, the Court has discretion whether or not to hear the pendant claims under the DCHRA and District of Columbia contract law. *See* 28 U.S.C. § 1367. However, the Court declines to exercise its supplemental jurisdiction over these claims that are purely a matter of D.C. law. These claims are more properly heard in District of Columbia Superior Court and therefore are DISMISSED WITHOUT PREJUDICE.

## CONCLUSION

Accordingly, for the reasons stated, it is hereby

ORDERED that defendant's Motion for Summary Judgment [20] is GRANTED IN PART and plaintiff's claim under the ADA is DISMISSED WITH PREJUDICE; and it is further

ORDERED that defendant's Motion for Summary Judgment is DENIED IN PART with respect to plaintiff's claims under the DCHRA and his contract claims, and that these claims are DISMISSED WITHOUT PREJUDICE pursuant to 28 U.S.C. § 1367.